UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **TYSON DOOLEY, individually and on behalf of all others similarly situated**<br><br>      **Plaintiffs,**<br><br>**VERSUS**<br><br><br>**NINE ENERGY SERVICES, L.L.C.**<br><br>      **Defendant.** | **CIVIL ACTION NO. 4:15-CV-02433**<br><br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' OPPOSED MOTION FOR CONDITIONAL CERTIFICATION AND
NOTICE TO POTENTIAL CLASS MEMBERS**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ..................................................................................................1

II.  FACTS ................................................................................................................3

III.  PLAINTIFFS' BURDEN, WHILE LENIENT, IS NOT "INVISIBLE" AND CONDITIONAL CERTIFICATION IS FAR FROM AUTOMATIC .............................5

IV.  ANALYSIS AND ARGUMENT ...............................................................................7

    A.  PLAINTIFFS HAVE FAILED TO ALLEGE, SUBSTANTIALLY OR OTHERWISE, A UNIFORM POLICY, PLAN, OR DECISION WARRANTING CONDITIONAL CERTIFICATION .......................................7

    B.  LIABILITY ISSUES WILL BE HIGHLY INDIVIDUALIZED BASED ON THE EXEMPTION DEFENSES AT ISSUE, SUCH THAT REPRESENTATIVE DISCOVERY AND ADJUDICATION IS IMPROPER ........................................................................................9

        1.  Individualized issues raised by the MCA exemption ................................9

        2.  Individualized issues raised by highly-compensated and other § 213(a)(1) exemptions..............................................................................13

        3.  The cookie-cutter declarations offered in support of Plaintiffs' Motion are not based on personal knowledge and are instead filled with conclusory allegations and other inadmissible testimony................16

        4.  The addition of individualized state law claims and incompatible representative action procedures further warrants the exercise of discretion to deny conditional certification .............................................20

V.  CONCLUSION ....................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516 (5th Cir. 2010)................................5

*Aguirre v. SBC Communications, Inc.*, 2006 WL 964554 (S.D. Tex. April 11, 2006) .............5, 6

*Andel v. Patterson–UTI Drilling Co., LLC*, 280 F.R.D. 287 (S.D. Tex. 2012)............................8

*Aquilino v. Home Depot, U.S.A., Inc.,* 2011 U.S. Dist. LEXIS 15759 (D. N.J. February 15, 2011) ...............................................................................................................................15

*Barron v. Henry County Sch. Sys.,* 242 F. Supp. 2d 1096 (M.D. Ala. 2003)...............................6

*Basco v. Wal-Mart Stores, Inc*., 2004 WL 1497709 (E.D. La. July 2, 2004)...............................6

*Bishop v. Petro-Chemical Transport, LLC*, 582 F. Supp. 2d 1290 (E.D. Cal. July 17, 2008)..............................................................................................................................12

*Blake v. Hewlett–Packard Co.,* 2013 WL 3753965 (S.D. Tex. July 11, 2013)............................8

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012) .......13, 22

*England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504 (M.D. La. 2005) ...............................6

*Glanville v. Dupar, Inc.,* 2009 WL 3255292 (S.D. Tex. 2009)...................................................10

*Grayson v. K Mart Corp.,* 79 F.3d 1086 (11th Cir.1996) ...........................................................20

*Green v. Harbor Freight Tools USA, Inc*., 888 F. Supp. 2d 1088 (D. Kan. 2012)......................15

*H & R Block, Ltd. v. Housden,* 186 F.R.D. 399 (E.D. Tex. 1999)........................................16, 20

*Harris v. Fee Transp. Servs., Inc.*, 2006 WL 1994586 (N.D. Tex. May 15, 2006).......................7

*Haynes v. Singer Co.*, 696 F.2d 884 (11th Cir. 1983).................................................................16

*Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165  (1989) ...........................................................5

*Holt v. Rite Aid Corp.,* 333 F. Supp. 2d 1265 (M.D. Ala. 2004)..................................................9

*Jackson v. City of San Antonio,* 220 F.R.D. 55 (W.D. Tex. 2003).............................................20

*Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008) .....................................14

*King v. West Corporation*, 2006 U.S. Dist. LEXIS 3926 (D. Neb. 2006) ...................................8

*LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286 (5th Cir. 1975)............................................20

*Lang v. DirecTV, Inc.,* 735 F. Supp. 2d 421 (E.D. La. 2010)........................................20

*Lentz v. Spanky's Rest. II, Inc.,* 491 F. Supp. 2d 663 (N.D.Tex. 2007)....................................6, 20

*Levinson v. Spector Motor Serv.,* 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947) ...............10

*Lusardi v. Xerox Corp.,* 122 F.R.D. 463 (D.N.J. 1988) ................................................5

*Mooney v. Aramco Services Co.,* 54 F.3d 1207 (5th Cir. 1995)................................................6, 7

*Morisky v. Public Service Elec. and Gas Co.,* 111 F. Supp. 2d 493 (D.N.J. 2000)..............8, 9, 15

*Oetinger v. First Residential Mortgage Network, Inc.,* 2009 U.S. Dist. LEXIS 61877 (W.D. Ky. Jul. 15, 2009)....................................................8, 15

*Parker v. Rowland Express, Inc.,* 492 F. Supp. 2d 1159 (D.Minn. 2007) .....................................6

*Pedigo v. 30003 South Lamar, LLP,* 666 F. Supp. 2d 693 (W.D. Tex. 2009) ...............................5

*Reich v. Homier Distributing Co., Inc.,* 362 F. Supp. 2d 1009 (N.D. Ind. 2005).........................9

*Reyes v. Tex. EZPawn, L.P.,* 2007 U.S. Dist. LEXIS 1461 (S.D. Tex. Jan. 8, 2007)...................15

*Rojas v. Garda CL Se., Inc.,* 2015 WL 5084135 (S.D. Fla. 2015), *appeal docketed,* 15-14379 (11th Cir. Sept. 29, 2015) ....................................................12

*Simmons v. T-Mobile USA, Inc.,* 2007 WL 210008 (S.D. Tex. Jan. 24, 2007) .............................6

*Smith v. Heartland Automotive Services, Inc.,* 404 F. Supp. 2d 1144 (D. Minn. 2005)..............15

*Songer v. Dillon Res., Inc.,* 569 F. Supp. 2d 703 (N.D. Tex. 2008) ........................................7, 20

*Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392 (D.N.J. 1988)........................................5, 6

*Stiles v. FFE Transp. Servs.,* 2010 U.S. Dist. LEXIS 24250 (N.D. Tex. Mar. 15, 2010)............19

*Trinh v. JP Morgan Chase & Co.,* 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) .....................14

*Vallejo v. Garda CL Southwest, Inc.,* 56 F. Supp. 3d 862 (S.D. Tex. 2014), *appeal docketed,* 14-20666 (5th Cir. Oct. 30, 2014) ..................................................10

*Vanzinni v. Action Meat Distributors,* 995 F. Supp. 2d 703 (S.D. Tex. Jan. 31, 2014)...............12

*Walters v. American Coach Lines of Miami, Inc.,* 575 F.3d 1221 (11th Cir. 2009)....................10

**Statutes**

29 U.S.C. § 213(b)(1) ............................................................................................1, 10

29 U.S.C. § 216(b) ...........................................................................................i, 1, 5, 21

49 U.S.C. § 31132(1)(A) ...........................................................................................11

49 U.S.C. § 31502 ....................................................................................................10

**Other Authorities**

DOL Field Assistance Bulletin No. 2010-2 ................................................................11

Pub. L. No. 109-59, 119 Stat. 114 .............................................................................11

Pub. L. No. 110-244, 122 Stat. 1572 .........................................................................11

**Rules**

Fed. R. Civ. Proc. 23 ............................................................................................1, 20

**Regulations**

29 C.F.R. § 541.100 .................................................................................................14

29 C.F.R. § 541.200 .................................................................................................14

29 C.F.R. § 541.300 .................................................................................................14

29 C.F.R. § 541.601(a) ...............................................................................................1

29 C.F.R. § 541.601(c) .............................................................................................13

29 C.F.R. § 782.2(a) .................................................................................................10

{B1072569.1}

## I.     INTRODUCTION

Nine Energy Service, LLC ("Nine," misnamed as "Nine Energy Services, L.L.C." in the Complaint), opposes Plaintiffs' Motion for Conditional Certification and Notice to Potential Class Members ("Motion").[1] Rec. Doc. 16.

Lead Plaintiff, Tyson Dooley, filed this lawsuit on August 24, 2015, on behalf of himself and others allegedly similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and on behalf of a putative Rule 23 class of individuals under the New Mexico Minimum Wage Act ("NMMWA") against Nine, his former employer. Rec. Doc. 1. Plaintiff claims he and other engineers, including the handful who have filed consent forms to join this lawsuit (collectively "Plaintiffs"), were entitled to but did not receive overtime pay while working for Nine, and in spite of annualized compensation that in some cases – as in Plaintiff Dooley's – reached *a quarter of a million dollars*. *Id.* Nine, a motor carrier regulated by the U.S. Department of Transportation ("DOT"), denies the claims because Plaintiffs and other engineers – highly-compensated, highly-skilled, DOT-regulated drivers – were at all times exempt from overtime under one or more highly individualized, fact-specific FLSA exemptions, including the Motor Carrier Act ("MCA") exemption, 29 U.S.C. § 213(b)(1), the highly-compensated employee exemption, 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.601(a), and, as part of the highly-compensated exemption and/or individually, the executive, administrative, and/or professional exemptions, 29 U.S.C. § 213(a)(1). Rec. Doc. 6.

---

[1] In support of this opposition, Nine attaches the following evidence: Exhibit 1, Declaration of Brett Quigley; Exhibit 2, Declaration of Ken Preston; and Exhibit 3, Collective Declarations from *Andrew Jones et al. v. Cretic Energy Services, LLC*, 4:15-cv-00051, Rec. Doc. 21 (S.D. Tex. filed January 9, 2015) and *Jorge Echeverria et al. v. Martin Midstream Partners*, 2:14-cv-00197, Rec. Doc. 13 (S.D. Tex. filed May 27, 2014).

Plaintiff seeks to certify two different groups of individuals to seek different relief under different laws using different procedural mechanisms in this lawsuit. Rec. Doc. 1, ¶¶ 4-6. In his current Motion, Plaintiff seeks conditional certification of an "FLSA Class" of all "current and former employees of CDK Perforating, LLC ('CDK') or Nine Energy Services, LLC ('Nine'), who were employed by CDK or Nine in conjunction with the CDK business during the past three years as an engineer." Rec. Doc. 1, ¶ 5. Although not addressed in his Motion, Plaintiff also will be asking this Court to certify a Rule 23 or "NMMWA Class" of engineers like those described above but who "worked in New Mexico." Rec. Doc. 1, ¶ 6. Plaintiff does not address in his Motion the incompatibility of the different procedural mechanisms called for in this case or how the differences in the putative plaintiffs' claims affect their request for conditional certification.

Plaintiffs' motion should be denied because (1) they have failed to provide substantial allegations, much less evidence, of a uniform policy, plan, or decision infected by discrimination as required to show they and other engineers are similarly situated, and (2) exemption-based liability issues, as well as damages issues, will require individualized discovery and determinations. Conditional certification of FLSA collective actions, however lenient the burden may be, is not appropriate in every case, nor is it automatic. In this specific case, the record reflects that collective adjudication is not legally proper, and it would be neither efficient nor economical for the Court or the parties to conditionally certify an action for which decertification would be inevitable.

## II.  FACTS

Nine[2] has been engaged in the business of providing wireline services to oil and gas production companies in the completion and workover of well sites throughout Texas and other states since at least 2012. Exhibit 2, Declaration of Ken Preston ("Preston Decl."), ¶ 4. Based on the interstate nature of its business and the fleet of vehicles used to provide wireline services, Nine is a motor carrier regulated by the U.S. Department of Transportation ("DOT") operating under USDOT Number 1893013, and has been a registered motor carrier since 2009. Quigley Decl., ¶ 4; Preston Decl., ¶ 6. The Company also engages in the interstate transportation of hazardous materials regulated by the DOT, specifically explosives, for use in its wireline services business.[3] Quigley Decl., ¶ 6; Preston Decl., ¶ 10.

The Company employs wireline engineers, the position held by Plaintiffs, to lead and supervise wireline crews, which typically consist of two or three other crew members in addition to the engineer. Preston Decl., ¶ 7; Rec. Docs. 16-1 – 16-4,  ¶ 2. The wireline crews operate various large vehicles for the Company's wireline services business in Texas and other states, and transport regulated explosives required to perform their jobs. Preston Decl., ¶¶ 8, 10. The Company's vehicle fleet includes but is not limited to wireline trucks, cranes, and various makes of one ton and larger vehicles to which gooseneck trailers may be attached for transporting heavy

---

[2] Prior to 2014, Nine's wireline business was operated under the name CDK Perforating LLC ("CDK") (collectively Nine and CDK are referred to as the "Company"). Exhibit 1, Declaration of Brett Quigley ("Quigley Decl."), ¶ 3; Rec. Doc. 1, ¶ 4. Brett Quigley, Nine's Director, Fleet & DOT Compliance, is responsible for, among other things, formulating and implementing the its policies and procedures for compliance with federal laws regulating motor carriers and interstate transportation. Quigley Decl., ¶¶ 2-3.

[3] Attached to Mr. Quigley's declaration is copy of the Company Snapshot as of January 7, 2016, made available to the general public by the Federal Motor Carrier Safety Administration through its Safety and Fitness Electronic Records ("SAFER") System online at www.safer.fmcsa.dot.gov. Quigley Decl., ¶ 5. The Company Snapshot shows that Nine is regulated by the DOT and that it handles hazardous materials. *Id.*

equipment and materials used on jobs. Preston Decl., ¶ 9. The gross vehicle weight rating is approximately 60,000 pounds for a wireline truck, 80,000 pounds for a crane, and between 10,800 – 19,500 pounds for other one ton and larger vehicles in the Company's fleet. Quigley Decl., ¶¶ 8-10. The wireline trucks, cranes, and Dodge 5500s in the Company's fleet are IRP-licensed and IFTA-permitted for a combined weight of up to 80,000 pounds.[4] Quigley Decl., ¶ 13.

Engineers and their crew members are required or reasonably expected to travel across state lines to provide wireline services to customers. Preston Decl., ¶ 11. They also are required to possess a valid Commercial Driver's License for employment and to accurately complete driver logs for DOT compliance purposes. Preston Decl., ¶¶ 12-13; Quigley Decl., ¶¶ 14-15. Engineers also are very highly compensated for their services. Preston Decl., ¶ 18. For example, Plaintiffs Tyson Dooley and Sir Brady Wolfe had annualized earnings of approximately $250,000 in 2015, which includes a base annual salary of at least $65,000. *Id.* Additionally, Plaintiffs Brian Cavallaro and Brandon Enns had annualized earnings well in excess of $100,000, including a base annual salary of at least $65,000, during their employment by the Company. *Id.*

---

[4] The International Registration Plan ("IRP") is a registration reciprocity agreement among the states of the United States, and other jurisdictions, required for vehicles weighing more than 26,000 pounds that cross state lines. The International Fuel Tax Agreement ("IFTA") is an agreement among the lower 48 states of the United States, and other jurisdictions, to simplify reporting of fuel use by motor carriers and is required for vehicles weighing more than 26,000 pounds that cross state lines. Quigley Decl., ¶¶ 11-12.

## III.   PLAINTIFFS' BURDEN, WHILE LENIENT, IS NOT "INVISIBLE" AND CONDITIONAL CERTIFICATION IS FAR FROM AUTOMATIC

While the FLSA permits an individual to assert claims on behalf of himself and any "similarly situated" persons, it does not define "similarly situated" or expressly provide for class certification or judicially approved notice to putative plaintiffs. 29 U.S.C. § 216(b). The Supreme Court has recognized that district courts "have discretion, in *appropriate* cases, to implement" the FLSA's collective action mechanism "by facilitating notice to potential plaintiffs." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (emphasis added); *Aguirre v. SBC Communications, Inc.*, 2006 WL 964554, *4 (S.D. Tex. April 11, 2006) (this Court noted that district courts "have discretion in deciding whether to order notice to potential plaintiffs"). This mechanism is only proper in cases involving "common issues of law and fact arising from the same alleged . . . activity," such that resolution of common issues in one proceeding would promote efficiency and judicial economy. *Id.* at 170.

The Fifth Circuit has yet to decide "how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single *§ 216(b)* action." *Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 519 n. 1 (5th Cir. 2010). However, the majority of district courts in this circuit have adopted the two-stage process recognized in *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988); *Aguirre,* 2006 WL 964554, *4; *Pedigo v. 30003 South Lamar, LLP*, 666 F. Supp. 2d 693, 695 n. 5 (W.D. Tex. 2009). During the initial stage, the plaintiff bears the burden of showing that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit. *Aguirre,* 2006 WL 964554, *6. Most important, the plaintiff must come forward with "'substantial allegations that

the putative class members were together the victims of a <u>single decision, policy, or plan</u> infected by discrimination.'" *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 n. 8 (5th Cir. 1995), quoting *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J. 1988) (emphasis added); *Aguirre*, 2006 WL 964554, *6. Most courts also require some factual support for allegations of classwide discrimination to authorize notice. *Aguirre,* 2006 WL 964554, *6.

"A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Aguirre,* 2006 WL 964554, *5, quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, *4 (S.D. Tex. Jan. 24, 2007) (Atlas, J.) (denying conditional certification); *Barron v. Henry County Sch. Sys.,* 242 F. Supp. 2d 1096, 1104 (M.D. Ala. 2003) ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences."). If conditional certification is granted, then, during the second stage, the court decides based on the evidence developed during discovery whether the conditionally-certified class should be decertified. *Basco v. Wal-Mart Stores, Inc*., 2004 WL 1497709, *3 (E.D. La. July 2, 2004). If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England,* 370 F. Supp. 2d at 508.

While Plaintiffs' burden at this initial stage is relatively lenient, the burden is not "invisible" nor is conditional certification automatic:

> While the plaintiffs' burden at this stage is not onerous, neither is it invisible. *Parker v. Rowland Express, Inc.*, 492 F.Supp.2d 1159, 1164 (D.Minn. 2007). In deciding whether plaintiffs have met their burden, the court 'is mindful that it, like practicing attorneys, has a responsibility to   refrain from stirring up unwarranted litigation.' *Lentz v. Spanky's Rest. II, Inc*., 491 F.Supp.2d 663, 669 (N.D.Tex. 2007) (internal citations omitted). 'Further, employers should not be

unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense[ ].' *Id.* (internal citations and quotations omitted).

*Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 706-07 (N.D. Tex. 2008). "[N]otice is by no means mandatory" and "the relevant inquiry in each particular case is whether it would be appropriate to exercise such discretion." *Harris v. Fee Transp. Servs., Inc.*, 2006 WL 1994586, *2 (N.D. Tex. May 15, 2006).

## IV.     ANALYSIS AND ARGUMENT

### A.     Plaintiffs have failed to allege, substantially or otherwise, a uniform policy, plan, or decision warranting conditional certification

The Fifth Circuit in *Mooney* made clear that a plaintiff must present substantial allegations of a uniform policy, plan, or decision infected by discrimination to show he and the putative plaintiffs are "similarly situated," thus warranting conditional certification. *Mooney*, 54 F.3d at 1214 n. 8. The only attempt by Plaintiffs to meet this requirement is to allege that Nine had a "broad, uniform practice of paying the Putative Class Members a salary and a bonus without overtime." Rec. Doc. 16, p. 9. In other words, Plaintiffs simply claim they were misclassified as exempt and hope the Court will find this qualifies as a uniform policy, plan, or decision infected by discrimination. However, this is only an alleged FLSA violation, not the alleged discriminatory policy, plan, or decision that caused or lead to the purported violation, which is required to justify conditional certification, and is insufficient as a matter of law to satisfy this threshold requirement.

If as Plaintiffs suggest simply paying a salary and classifying employees as exempt were enough to meet the uniform policy, plan, or decision requirement, then it would be a meaningless requirement and every misclassification case would automatically be proper for conditional

certification. This is neither logical nor legally correct, as courts have recognized. *Andel v. Patterson–UTI Drilling Co., LLC*, 280 F.R.D. 287 (S.D. Tex. 2012) (rejecting plaintiffs' argument that an alleged uniform misclassification of independent contractors satisfied its burden for conditional certification and denying certification for lack of evidence of a uniform, widespread policy or practice of discrimination); *Blake v. Hewlett–Packard Co.,* 2013 WL 3753965 (S.D. Tex. July 11, 2013) (denying motion for conditional certification of alleged misclassification of "exempt" employees because evidence of a single human resources decision-maker and an uniform "exempt" classification do not show a uniform policy or practice of discrimination).

Courts have made clear that "[m]erely showing that the employer classified a group of employees as exempt is not sufficient to establish that [those] employees **are** similarly situated for the purposes of an FLSA collective action." *King v. West Corporation*, 2006 U.S. Dist. LEXIS 3926, *41 (D. Neb. 2006) (citation omitted); *see also Morisky v. Public Service Elec. and Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (finding defendants' "common scheme" of classifying employees as exempt did not bind class sufficiently such that plaintiffs were "similarly situated"); *Oetinger v. First Residential Mortgage Network, Inc*., 2009 U.S. Dist. LEXIS 61877 (W.D. Ky. Jul. 15, 2009) ("Merely being classified as exempt does not give rise to a right of action under 29 U.S.C. 216(b). . . . [C]ompanies may indeed apply company-wide policies to their employees, but these policies must cause the alleged FLSA violation for the policy to be considered as a factor in determining whether employees are 'similarly situated' for purposes of bringing a collective action.").

The required allegations are absent from the Complaint and from the declarations submitted with Plaintiffs' Motion. As there is no specification of the uniform, discriminatory

policy, plan, or decision that caused the alleged FLSA violation – only references to the alleged violation itself (alleged misclassification and failure to pay overtime) – this requirement has not been met and conditional certification is improper.

> **B.     Liability issues will be highly individualized based on the exemption defenses at issue, such that representative discovery and adjudication is improper**

Plaintiff Dooley and three opt-ins Plaintiffs present cookie-cutter declarations (whose defects are addressed *infra*) with their Motion in an effort to convince the Court that they are all alike. As a threshold matter, however, Plaintiffs do not address the variations in their claims and neither the Complaint nor the consent forms filed by Plaintiffs indicate which of them asserts a New Mexico wage law claim. More important, however, is the nature of this case and the undeniably individualized analysis presented by the several overtime exemptions asserted by Nine. The exemptions at issue are, by nature, individualized and require discovery and consideration of numerous plaintiff-specific, job-specific, vehicle-specific, and workweek-specific elements to determine liability. In fact, a number of courts have refused to certify a class, even conditionally, when determining whether the employer improperly treated the plaintiffs as nonexempt would require a highly individualized, fact-intensive inquiry, as discussed further below with regard to each exemption at issue. *See Reich v. Homier Distributing Co., Inc.,* 362 F.Supp.2d 1009, 1013-14 (N.D. Ind. 2005); *Holt v. Rite Aid Corp.,* 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004); *Morisky,* 111 F. Supp. 2d at 498.

> **1.     Individualized issues raised by the MCA exemption**

The FLSA exempts from its overtime requirements "any employee with respect to whom the Secretary of Transportation ["DOT"] has power to establish qualifications and maximum

horus of service" pursuant to 49 U.S.C. § 31502, the Motor Carrier Act. 29 U.S.C. § 213(b)(1) (emphasis added); *Vallejo v. Garda CL Southwest, Inc.,* 56 F. Supp. 3d 862, 868 (S.D. Tex. 2014), *appeal docketed*, 14-20666 (5th Cir. Oct. 30, 2014); *Glanville v. Dupar, Inc.,* 2009 WL 3255292, *3 (S.D. Tex. 2009). The exemption eliminates potential conflicts between the U.S. Department of Labor's ("DOL") jurisdiction over the FLSA and the DOT's jurisdiction over the MCA. *Vallejo*, 56 F. Supp. 3d at 868. "An example of potential conflict is the FLSA's requirement to pay overtime hours at one and one-half times the regular pay rate. Encouraging drivers to work overtime hours could undermine safety regulations limiting the number of continuous hours drivers may be on the road." *Id.,* citing *Walters v. American Coach Lines of Miami, Inc.,* 575 F.3d 1221, 1226 (11th Cir. 2009); *Levinson v. Spector Motor Serv.,* 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947).

The MCA exemption depends upon both the class to which the employer belongs and "the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). The DOT's power of regulation extends to employees, including drivers, driver's helpers, loaders, and mechanics, who engage in or are likely to be called upon to engage in activities "of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.* According to the DOL regulations, the exemption also is to be evaluated on a workweek-by-workweek basis. 29 C.F.R. § 782.2(a) (the employee comes within the exemption "in all workweeks in which he is employed at such job" and discussing whether the employee's activities are "devoted to such safety-affecting work in the particular workweek" at hand).

A series of amendments affecting the exemption imposed yet another individualized factor in determining whether the exemption applies. In 2005, Congress enacted the Safe,

Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub. L. No. 109-59, 119 Stat. 114; *Glanville,* 2009 WL 3255292, *4. This amendment limited the DOT's regulatory power to those carriers using commercial motor vehicles, which were defined to have a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater. 49 U.S.C. § 31132(1)(A); *Glanville,* 2009 WL 3255292, *4. In 2008, Congress enacted the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), Pub. L. No. 110-244, 122 Stat. 1572, which restored the scope of the DOT's regulatory jurisdiction by eliminating the "commercial" requirement and, thus, the limitation imposed on the DOT's authority based on the weight of the vehicle. *Glanville,* 2009 WL 3255292, *4. At the same time, however, the TCA narrowed the scope of the MCA exemption, separately providing that the overtime provisions of the FLSA shall apply to "a covered employee notwithstanding" the MCA exemption. TCA § 306; *Glanville,* 2009 WL 3255292, *4.

The TCA specifically refers to a "covered employee" as an "<u>individual</u>" whose work "in whole or in part" is "that of a driver, driver's helper, loader or mechanic" and affects "the safety of operation of motor vehicles <u>weighing 10,000 pounds or less</u> in transportation on public highways in interstate or foreign commerce," and "who performs duties on motor vehicles weighing 10,000 pounds or less." TCA § 306(e). The DOL issued Field Assistance Bulletin No. 2010-2 on November 4, 2012, stating that the MCA exemption does not apply "<u>in any workweek</u>" in which the individual's work is as described in the TCA.

Thus, under the DOL's interpretation, this exemption alone will require a plaintiff-by-plaintiff, job-by-job, vehicle-by-vehicle, week-by-week analysis in order to assess liability. Nine has clearly shown that the MCA exemption is at issue because it is a motor carrier regulated by the DOT, its engineers are required to possess valid CDLs, the engineers and their crews

transport DOT-regulated hazardous materials used in providing wireline services to customers, and they travel or are reasonably expected to travel in interstate commerce to perform services for the Nine's customers. Exhibits 1 and 2, Declarations of Brett Quigley and Ken Preston, respectively. There simply is no way to conduct discovery on or adjudicate the issues raised in this case on a collective basis, nor is there any benefit to conditionally certifying a case that inevitably will have to be decertified.

One court presented with the same issue agreed with this position and refused to conditionally certify an FLSA collective action based on the individualized issues raised by the MCA exemption defense. In *Bishop v. Petro-Chemical Transport, LLC*, 582 F.Supp.2d 1290, 1297 (E.D. Cal. July 17, 2008), the court agreed that an "intensive individualized inquiry" as to whether each potential class member drove across state lines would preclude conditional certification even if the plaintiff in that case had shown that he was similarly situated to other drivers. Other courts have more recently cited the individualized inquiry required in MCA exemption cases in decertifying cases that previously have been conditionally certified. *Vanzinni v. Action Meat Distributors*, 995 F. Supp. 2d 703, 723 (S.D. Tex. Jan. 31, 2014) (noting the "highly factual, individualized inquiry that determining whether the MCA exemption applies" would require precluded plaintiff who survived summary judgment from remaining in the certified group); *Rojas v. Garda CL Se., Inc.*, 2015 WL 5084135 (S.D. Fla. 2015), *appeal docketed*, 15-14379 (11th Cir. Sept. 29, 2015) (decertifying the collective action and noting that determining coverage "will require an individual inquiry into the amount of time each opt-in plaintiff used a light or personal vehicle as opposed to an armored vehicle").

Proceeding with discovery on a representative basis will only delay progress in this matter because inevitably, whether for the purpose of a decertification motion, dispositive

motion, trial, or otherwise, individualized evidence will be necessary to adjudicate the claims in this case.

### 2. Individualized issues raised by highly-compensated and other § 213(a)(1) exemptions

Wireline engineers provide highly-skilled and specialized expertise to Nine's customers in well completion and workover operations, and they lead and supervise the other members of wireline crews. Preston Decl., ¶ 7. Their substantial compensation is a reflection of the exempt nature of their duties. As the Supreme Court noted in *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012), the FLSA was not intended to apply to well-compensated employees, referring to those who earned approximately $70,000 annually. Nine's wireline engineers can earn more than four times the annual compensation noted by the Supreme Court in *Christopher*. In fact, Plaintiffs Dooley and Sir Brady Wolfe each had annualized earnings of approximately a quarter of a million dollars while working for Nine. Preston Decl., ¶ 18. They are clearly high earners of the type referred to by the Supreme Court, and contemplated by the DOL in delineating the highly-compensated exemption. As the DOL recognizes in its regulations, "a high level of compensation is a strong indicator of an employee's exempt status" such that the performance of any one of the exempt duties of the executive, administrative, or professional exemptions combined with the high level of compensation will make the employee exempt. 29 C.F.R. § 541.601(c).

Because engineers at Nine are highly compensated, their compensation level plus any one of the following duties will make an employee exempt:

> Management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

Customarily and regularly directing the work of two or more other employees;

Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight;

The performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;

The exercise of discretion and independent judgment with respect to matters of significance;

The performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. §§ 541.100, 200, and 300. The terms "primary duty," "management," "department or subdivision," "two or more other employees," "particular weight," "discretion and independent judgment," and other key terms used to describe these exempt duties are further defined in the regulations for the purpose of this analysis. 29 C.F.R. §§ 541.100, *et al*. Whether any engineer satisfies the highly-compensated exemption, or any other Section 541 exemption at issue will involve a Plaintiff-by-Plaintiff analysis.

Other courts have recognized the impediment to certification that individualized exemption issues can present, both at the first and second stages of the *Lusardi* process. "As the ultimate issue here is whether plaintiffs are misclassified, a **fact-intensive** inquiry into their respective employment experiences is required." *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 575 (E.D. La. 2008) (emphasis added). Exemption defenses are inherently individualized and inhibit the efficiency of proceeding on a collective basis. *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161, **1, 5 (S.D. Cal. Apr. 22, 2008) (denying conditional certification due to individualized nature of exemption defenses, noting that whether "loan officers are 'exempt'

necessarily involves a fact-by-fact inquiry into the circumstances of each employee to see if he or she falls within an administrative, outside sales, highly compensated, combination, or any other exemption"); *Holt,* 333 F. Supp. 2d at 1271; *Smith v. Heartland Automotive Services, Inc.,* 404 F. Supp. 2d 1144, 1150 (D. Minn. 2005); *Green v. Harbor Freight Tools USA, Inc*., 888 F. Supp. 2d 1088 (D. Kan. 2012)*.*

As one court noted, the determination of whether an employee satisfies executive exemption criteria, one of the exemptions at issue in this lawsuit, is "an individual, fact-specific analysis of each employee's relevant statutory exemption criteria." *Aquilino v. Home Depot, U.S.A., Inc.,* 2011 U.S. Dist. LEXIS 15759, *20-21 (D. N.J. February 15, 2011), citing *Morisky,* 111 F. Supp. 2d at 498; *see also Reyes v. Tex. EZPawn, L.P.,* 2007 U.S. Dist. LEXIS 1461, at *26 (S.D. Tex. Jan. 8, 2007) (acknowledging in defense analysis that "the degree of discretion and authority each [opt-in Plaintiff] exercised varied depending on store management and store demographics, making this case particularly unsuitable for collective treatment when applying exemption analysis"). Another court recently reached the same conclusion when evaluating the individualized nature of the analyses required in assessing the administrative and executive exemptions, noting that the employer "will have highly individualized defenses to the various claims" and that "the Court would have to go through an individualized appraisal of the employee's duties and responsibilities." *Oetinger*, 2009 U.S. Dist. LEXIS 61877 at *10 (plaintiffs claimed they were similarly situated because they were all classified as exempt, but the exemption defenses required examination of individual duties and responsibilities).

As in the cases cited above, the same result should be reached here, where the individualized facts required to assess the exemption defenses must be adjudicated on a case-by-case basis.

      **3.**      **The cookie-cutter declarations offered in support of Plaintiffs' Motion are not based on personal knowledge and are instead filled with conclusory allegations and other inadmissible testimony**

Plaintiffs' declarations are virtually identical save for their dates of employment. Rec. Doc. 16-1 – 16-4. They contain many statements not supported by personal knowledge, such as generalized statements of what the Plaintiffs claim to "know" that other unspecified crew members did or how they feel ("I know that all of Nine's wireline crew members performed wireline services in the same or similar manner . . . ."; "I know that other similarly situated current and former wireline field engineers of Nine would be interested to learn about their rights . . . ."). Rec. Doc. 16-1 – 16-4, ¶¶ 8-9. Plaintiffs do not demonstrate with any competent factual testimony any foundation or basis in personal knowledge for such statements. How could they possibly know what "*all* of Nine's wireline crew members" did when crews work in groups of three or four, and there is only one engineer in each crew? Preston Decl., ¶ 7. How could they possibly know *all* of Nine's "current and former wireline field engineers" or what each such unspecified person would be interested to know? Does each Plaintiff actually know what "similarly situated" means? These assertions are conclusory, lack basis in personal knowledge, and cannot be considered in support of Plaintiffs' Motion. *See H&R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D. Tex. 1999). "[U]nsupported assertions of wide-spread FLSA violations, such as the ones made here, [do] not satisfy the movant's 216(b) burden." *H&R Block,* 186 F.R.D. at 400 (citing *Haynes v. Singer Co.*, 696 F.2d 884 (11th Cir. 1983)).

Not only are the Plaintiffs' declarations in this case similar to one another, they read like many declarations filed by different plaintiffs in different cases against different defendants represented by the same counsel. The four cookie-cutter declarations filed by Plaintiffs here are just like those filed by <u>other</u> plaintiffs in <u>another</u> lawsuit against a <u>different</u> employer in support

of their own motion for conditional certification. *See Andrew Jones et al. v. Cretic Energy Services, LLC*, 4:15-cv-00051, Rec. Doc. 21 (S.D. Texas filed  January 9, 2015). A simple review of the *Jones* case declarations along with Plaintiffs' declarations in this case show they are in all material respects identical.  In the *Jones* case, with respect to hours allegedly worked, each of the three declarants state:

> During the course of my employment with Cretic, I was paid a salary and a day rate. Despite the fact that I regularly work more than eighty-four (84) hours per week, Cretic never paid me overtime for any hours that I worked in excess of forty (40) hours in any workweek.

*See Jones* case declarations, attached collectively as Exhibit 3-A, Declaration of Andrew Taylor Jones, ¶ 3; Declaration of Stephen Cutlip, ¶ 3; and Declaration of Payton Hutto, ¶ 3.  Likewise in this case, and also with respect to hours allegedly worked, each Plaintiff states:

> During the course of my employment with Nine, I was paid a salary and a ticket bonus.  Despite the fact that I regularly work more than eighty-four (84) hours per week, Nine never paid me overtime for any hours that I worked in excess of forty (40) hours in any workweek.

*See* Declaration of Tyson Dooley, Rec. Doc. 16-1, ¶ 3; Declaration of Omero Hinostroza, Rec. Doc. 16-2, ¶ 3; Declaration of Sir Brady Allen Wolfe, Rec. Doc. 16-3, ¶ 3; and Declaration of Brian Cavallaro, Rec. Doc. 16-4, ¶ 3. Note the similarities – each paragraph in each declaration filed by each party in each case bears the same number; each repeats "During the course of my employment," "Despite the fact that I regularly work more than eighty-four (84) hours per week," and the employer "never paid me overtime for any hours that I worked in excess of forty (40) hours in any workweek." These are different cases, filed by different plaintiffs, against different employers, yet the all contain the same exact testimony.

Even the job duties alleged in each case bear conspicuous similarities. The three declarants in the *Jones* case each state:

> My duties and the duties of other coil tubing crew members were technical, physical and largely manual in nature. Most of the time I spent working was outside or in the shop performing maintenance and servicing our coil tubing equipment. The job did not require that I have a degree or any advanced training.

*See* Exhibit 3-A, Declaration of Andrew Taylor Jones, ¶ 6; Declaration of Stephen Cutlip, ¶ 6; and Declaration of Payton Hutto, ¶ 6.  Similarly in this case, each Plaintiff states:

> My duties and the duties of my other wireline crew members were technical, physical and largely manual in nature.  Most of the time I spent working was outside in the oilfield or in the shop performing maintenance on our wireline equipment.  The job did not require that I have a degree of any advanced training.

*See* Declaration of Tyson Dooley, Rec. Doc. 16-1, ¶ 6; Declaration of Omero Hinostroza, Rec. Doc. 16-2, ¶ 6; Declaration of Sir Brady Allen Wolfe, Rec. Doc. 16-3, ¶ 6; and Declaration of Brian Cavallaro, Rec. Doc. 16-4, ¶ 6.

Finally, each of the seven declarants in different lawsuits filed against different defendants apparently had the same idea and purported omniscience with respect to notice.  In the *Jones* case, the declarants state:

> I know that other similarly situated current and former employees of Cretic would be interested to learn about their rights and their opportunity to join this lawsuit. However, because we work in remote locations far away from home for long periods of time, I believe that in addition to receiving a letter, that an e-mail about the case and posting a notice in the trailers on the jobsites will guarantee that current employees of Cretic will be made aware of the case.

*See* Exhibit 3-A, Declaration of Andrew Taylor Jones, ¶ 9; Declaration of Stephen Cutlip, ¶ 9; and Declaration of Payton Hutto, ¶ 9.  Likewise in this case, the four declarants state:

> I know that other similarly situated current and former wireline engineers of Nine would be interested to learn about their rights and their opportunity to join this lawsuit.  However, because we work in remote locations far away from home for long periods of time, I believe that in addition to receiving a letter, that an e-mail about the case and posting a notice in the trailers on the jobsites

> will guarantee that current field wireline engineers at Nine will be
> made aware of this case.

*See* Declaration of Tyson Dooley, Rec. Doc. 16-1, ¶ 9; Declaration of Omero Hinostroza, Rec. Doc. 16-2, ¶ 9; Declaration of Sir Brady Allen Wolfe, Rec. Doc. 16-3, ¶ 9; and Declaration of Brian Cavallaro, Rec. Doc. 16-4, ¶ 9.

The striking similarities among the Plaintiffs' declarations exist in this case and across others, which further shows that the declarations are not based on each declarant's personal knowledge. This is made further apparent by the fact that in one such case, the declarations were identical right down to the same exact typographical error. *See* Declaration of Jorge A. Echeverria, ¶3; Declaration of James D. McClendon Jr., ¶3, from *Jorge Echeverria et al. v. Martin Midstream Partners*, 2:14-cv-00197, Rec. Doc. 13 (S.D. Tex. filed May 27, 2014) ("…and preform all other duties surrounding the same loading and unloading of dangerous chemicals.") (emphasis added), attached collectively as Exhibit 3-B.

There is a critical distinction between the type of substantial allegations required by courts in the Fifth Circuit to support a request for conditional certification, and the type of conclusory allegations that the same courts have repeatedly rejected. For example, in *Stiles v. FFE Transp. Servs.*, 2010 U.S. Dist. LEXIS 24250 (N.D. Tex. Mar. 15, 2010), the court considered the plaintiffs' own declarations, which were "close to identical in substance" and consisted "primarily of conclusory allegations unsupported by any facts based on … personal knowledge." *Id*. at *3. There, the plaintiffs declared that from their experience and conversations with other employees, each knew his colleagues often worked in excess of 40 hours per week and were subject to the same compensation policies and procedure. *Id*. The court found plaintiffs' attribution of personal knowledge of other employees' work habits and duties to "experience and conversations with other employees" to be vague, conclusory, and insufficient

evidence. *Id*. Ultimately, even under the lenient standard, the declarations failed to support conditional certification. *Id*., citing *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (conculsory allegations in affidavits submitted by plaintiffs were insufficient to warrant conditional class certification). *See also Lentz*, 491 F. Supp. 2d at 669 (conditional certification should be denied because plaintiff submitted only conclusory allegations); *H & R Block v. Housden*, 186 F.R.D. 399, 400 (E.D.Tex. 1999) (conditional certification not warranted because plaintiffs failed to identify potential plaintiffs, submit affidavits of potential plaintiffs, and submit other evidence showing a widespread plan of discrimination).

### 4. The addition of individualized state law claims and incompatible representative action procedures further warrants the exercise of discretion to deny conditional certification

This case presents an added challenge to representative treatment in that it includes a separate proposed Rule 23 class based on state law claims that apparently are not common to all Plaintiffs, raising the issue of whether § 216(b) and Rule 23 claims can be adjudicated in the same case. The Fifth Circuit has not definitively held that such claims can be adjudicated in the same case, and district courts within the Fifth Circuit are split on the issue. *Jackson v. City of San Antonio,* 220 F.R.D. 55, 59 (W.D. Tex. 2003) (declining to jointly adjudicate § 216(b) and Rule 23 claims, noting "the simultaneous management of the two 'irreconcilable' procedure for class formation is unwieldy, would detract from the efficient resolution of the substantive dispute and, most importantly, is frowned upon by the Fifth Circuit."), citing *LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 288-9 (5th Cir. 1975) (finding a fundamental difference between Rule 23 class actions and FLSA collective actions); *Lang v. DirecTV, Inc.,* 735 F. Supp. 2d 421, 427 (E.D. La. 2010) (exercising jurisdiction over state law clams in FLSA case); *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 n. 12 (11th Cir.1996) (noting that "the requirements for pursuing a §

216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23"); *LaChapelle,* 513 F.2d at 288-89. This is yet another impediment to conditional certification of <u>this specific case</u>.

## V.      CONCLUSION

Even at this early stage in the case and in spite of the relatively lenient burden for conditional certification, the case law and record overwhelmingly show that this action is not appropriate for conditional certification. Plaintiffs failed to allege the requisite discriminatory plan, practice, or decision uniformly resulting in the alleged FLSA violation. Additionally, the MCA and other exemption defenses will require plaintiff-specific discovery and preclude representative adjudication. Not every FLSA case is proper for collective action treatment, and this is one of those cases, however few they may be. Conditional certification is not automatic and the standard is not invisible, as Plaintiffs would have the Court believe. The interests of efficiency and judicial economy would not be served by conditional certification as it would only delay inevitable and necessary individual litigation of Plaintiffs' claims.

In the event the Court disagrees, and taking a cue from the Court in other cases, Defendant requests that the Court order the parties to meet and confer about the form and content of Plaintiffs' proposed notice and dissemination plan. There are numerous issues with the proposed notice and plan that should be capable of informal resolution among the parties, without briefing or Court intervention, based on well-established law. And, any issues that may remain after the parties attempt to reach a resolution can then be presented to the Court for decision, if needed.

Respectfully submitted,


/s/ Jennifer L. Anderson
Jennifer L. Anderson
Attorney-In-Charge
(TX Bar No. 24047796)
(Southern District of Texas Bar No. 34754)
Jones Walker LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, LA 70809
Telephone: (225) 248-2040
Facsimile: (225) 248-3040
E-mail: janderson@joneswalker.com

and

Christopher S. Mann
(TX Bar No. 24061563)
(Southern District of Texas Bar No. 605320)
Jones Walker LLP
201 St. Charles Avenue
New Orleans, LA 70170-5100
Telephone: (504) 582-8332
Facsimile: (504) 589-8332
E-mail: cmann@joneswalker.com

***Attorneys for Nine Energy Service, LLC***


## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2016, a copy of the foregoing was filed electronically using the Court's CM/ECF system and served in accordance with the Federal Rules of Civil Procedure. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.


/s/ Jennifer L. Anderson
Jennifer L. Anderson

{B1072569.1}

22